


IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANIEL MORALES, PETITIONER, | § | |
| V. | § | NO. 3:03-CV-1905-N (Consolidated with 3:03-CV-1907-N) |
| DOUGLAS DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION, RESPONDENT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court, this case has been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge follow:

**Parties**

Petitioner Daniel Morales is an inmate in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID). Respondent is Douglas Dretke, Director of TDCJ-CID.

**Factual and Procedural History**

Morales was a hospital technician at Baylor Medical Center. (3 R.R. at 55.) In August 1999, 20-year-old D.C. was in the hospital for colon surgery. (*Id.* at 22-23.) She had previously been at Baylor in May, and Morales was her technician then also. (*Id.* at 23, 25-26.) During her August stay, D.C. underwent extensive colon surgery, which resulted in her having a colostomy bag attached to her abdomen and an intravenous Demerol drip. (*Id.* at 27, 51.) Forty-eight hours after her surgery,

D.C., who had to sleep on her side, awoke to Morales rubbing her back, shoulders, and buttocks underneath her hospital gown. (*Id.* at 31-32.) When D.C. turned onto her back, Morales rubbed her legs and up toward her genitals, eventually putting his finger inside her vagina. (*Id.* at 32.) D.C. pushed the button to call a nurse, and Morales covered D.C. with a blanket and left before the nurse came in. (*Id.* at 33-34.) D.C. did not report the incident to her nurse until the next day because she was afraid Morales would do something to her if she told. (*Id.* at 34-36.)

Officer Ellis of the Baylor Police Department took D.C.'s statement, but D.C. did not tell Officer Ellis that Morales had penetrated her with his finger because she was embarrassed. (*Id.* at 36-37.) Detective Jeffrey Caughron of the Baylor Police Department interrogated Morales and videotaped it. (*Id.* at 14-15.) Morales admitted penetrating D.C. with his finger. (*Id.* at 19.) Morales did not believe D.C. had any romantic feelings toward him but that she wanted him to fondle her because she never told him to stop and she had previously exposed herself to him. (*Id.* at 58-61.) Detective Caughron questioned D.C. again in her hospital room and told her Morales admitted to more than she initially reported. (*Id.* at 20, 39.) D.C. began to cry and told Detective Caughron that Morales put his finger in her vagina. (*Id.*)

Morales was indicted for sexual assault. (1 State Habeas R. at 34.) After a bench trial, the trial court found him guilty and assessed his punishment at 20 years' confinement. (*Id.* at 36.) By agreement, an application to revoke Morales's 1993 probated 10-year sentence for sexual assault of a child was determined by the court along with the trial. (3 R.R. at 72-73.) The court found the allegations in the application true, revoked Morales's probation, and sentenced him to 10 years' confinement to run concurrently with his 20-year sentence. (*Id.*; 2 State Habeas R. at 33.) The Fifth District Court of Appeals affirmed Morales's convictions, and the Texas Court of Criminal Appeals

refused Morales's pro se petitions for discretionary review on February 7, 2001. *Morales v. State*, Nos. 5-99-2149-CR & 5-00-209-CR, 2000 WL 1256878 (Tex. App.—Dallas Sept. 6, 2000, pets. ref'd) (not designated for publication).

Morales filed two state applications for habeas corpus relief, challenging his sexual-assault conviction and the revocation of his probation, which the Court of Criminal Appeals denied without written order. *Ex parte Morales*, Nos. 51,571-01, -02 (Tex. Crim. App. Mar. 27, 2002) (not designated for publication). Morales filed another state habeas application challenging his sexual-assault conviction, which the Court of Criminal Appeals dismissed as a successive and, thus, abusive writ. *Ex parte Morales*, No. 51,571-04[1] (Tex. Crim. App. Apr. 16, 2003) (not designated for publication); *see* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (Vernon Supp. 2004-05). Morales also simultaneously filed a second habeas application attacking his probation revocation, which the Court of Criminal Appeals denied without written order. *Ex parte Morales*, No. 51,571-05 (Tex. Crim. App. Apr. 16, 2003) (not designated for publication). Morales's final two state habeas applications, attacking both his sexual-assault conviction and his probation revocation, were dismissed as abusive writs. *Ex parte Morales*, Nos. 51,571-06, -07 (Tex. Crim. App. Aug. 13, 2003). Morales filed his federal petitions for writ of habeas corpus in the United States District Court for the Northern District of Texas, Dallas Division, on August 21, 2003. *See* RULES GOVERNING SECTION 2254 CASES 3(d) (mandating timeliness determined by date petition placed in institution's internal mailing system); *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (per

---

[1]Morales's third original proceeding was a motion for leave to file a writ of mandamus in which he argued that the trial court had failed to rule on his first two habeas applications. After those applications were disposed of, the Court of Criminal Appeals denied the motion. *In re Morales*, No. 51,571-03 (Tex. Crim. App. Apr. 16, 2003) (not designated for publication).

curiam) (holding pro se habeas petition filed when papers delivered to prison authorities for mailing). The District Court consolidated the two petitions. (Docket Entry No. 13.)

## Issues

Morales argues his sexual-assault conviction was unconstitutional because:

1. the videotape of his confession was wrongfully admitted;
2. his confession was involuntary;
3. no hearing was held on the voluntariness of his confession;
4. D.C. consented to the incident;
5. the state habeas judge, who was not the presiding judge, improperly withdrew the presiding judge's order designating issues;
6. trial counsel was ineffective;
7. evidence leading to his conviction was obtained through an unconstitutional search, seizure, and arrest; and
8. his conviction was obtained by a violation of his privilege against self-incrimination.

He also argues his probation was wrongfully revoked based on the unconstitutional sexual-assault conviction.

## Exhaustion of State Court Remedies

Dretke argues that claims five through eight, as listed above, have not been exhausted and asserts that they have been procedurally defaulted. However, Dretke believes that Morales's remaining allegations have been properly exhausted.

## Standard of Review

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall not be granted with respect to any claim that was adjudicated on the

merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

**Exhaustion and Procedural Default**

Morales argues that the state habeas judge improperly withdrew the presiding judge's order designating issues, trial counsel was constitutionally ineffective, the evidence used to convict him was obtained in violation of the Fourth Amendment, and his conviction was secured through a

violation of the Fifth Amendment. (Federal Pet. No. 3:05-CV-1905-N ("1905 Federal Pet.") at 8C-8D.) Morales raised these claims in his second and third state habeas applications that challenged his sexual-assault conviction. (4 State Habeas R. at 7, 10; 7 State Habeas R. at 7-8, 12-17.) The Court of Criminal Appeals dismissed these applications as abuses of the writ; thus, the Court of Criminal Appeals did not review the merits of Morales's arguments raised in those applications. TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a).

Applicants seeking habeas relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court. *Picard v. Connor*, 404 U.S. 270, 275-76 (1981); *Fisher*, 160 F.3d at 302. This requires that the state court be given a fair opportunity to pass on the claim, which in turn requires that the applicant present his claims before the state courts in a procedurally proper manner according to the rules of the state courts. *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988) (per curiam).

Morales failed to raise these arguments in his first state application for habeas corpus relief. Thus, he seeks federal habeas relief on factual allegations that were never fairly presented in the Texas courts, which renders these claims unexhausted. *Finley v. Johnson*, 243 F.3d 215, 219 (5th Cir. 2001). However, Morales cannot return to the Texas courts to cure this deficiency. The Texas abuse-of-the-writ doctrine prohibits a successive habeas petition, absent a showing of cause, if the applicant urges grounds that could have been, but were not, raised in his first habeas petition. *Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1084 (1995). This doctrine is an adequate state procedural bar for purposes of federal habeas review. *Emery v.*

*Johnson*, 139 F.3d 191, 195 (5th Cir. 1997), *cert. denied*, 525 U.S. 969 (1998); *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998). Accordingly, federal habeas corpus relief is unavailable in the face of a state procedural default unless the petitioner can show either (1) cause for the default and actual prejudice or (2) that the federal court's failure to consider the claim will result in a miscarriage of justice, i.e., that the petitioner is actually innocent of the crime. *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Finley*, 243 F.3d at 219-20.

Morales argues that his claims are not procedurally barred because he was not able to discover their factual predicates before he filed his first state habeas application. (Pet'r 1/12/04 Reply at 3-4.) The factual bases of his claims attacking counsel's performance, the violation of his Fourth-Amendment rights, and the violation of his Fifth-Amendment rights should have been known to him before he filed his first state habeas corpus application. *Robison v. Johnson*, 151 F.3d 256, 263 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999). Further, as discussed below regarding Morales's insufficiency argument, Morales has failed to establish that he is actually innocent. These claims are procedurally barred. 28 U.S.C. § 2254(b)(2).

However, the factual basis of his claim that the state habeas judge improperly withdrew a prior order was not reasonably available to Morales until after his first state habeas application was ruled on. Thus, this is sufficient cause to excuse Morales's delay in raising this claim, and the claim is not procedurally barred. *Graves v. Cockrell*, 351 F.3d 143, 154-55 (5th Cir.), *amended in part on reh'g*, 351 F.3d 156 (5th Cir. 2003), *cert. denied*, 124 S. Ct. 2160 (2004).

**Evidence Admission**

Morales argues that the videotape of his confession was improperly admitted because the

operator was not an officer of the court and because Morales stated before the tape was recorded that he did not want to write or sign a confession. (1905 Federal Pet. at 7, 8A.) In habeas actions, federal courts do not sit to review the mere admissibility of evidence under state law. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999). However, state courts' evidentiary rulings warrant habeas relief when errors are so extreme that they constitute a denial of fundamental fairness under the Due Process Clause. *Id.* In other words, habeas relief is warranted only when erroneous admission or exclusion played a crucial, critical, and highly significant role in the trial. *Pemberton v. Collins*, 991 F.2d 1218, 1227 (5th Cir.), *cert. denied*, 510 U.S. 1025 (1993); *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). As noted by the state court of appeals, the videotape was properly admitted under state law. *Morales*, 2000 WL 1256878, at *4-5. Morales has failed to overcome the presumption of correctness of these findings. 28 U.S.C. § 2254(e)(1). Further, Jackson was not denied a fundamentally fair trial by the admission of the evidence. *E.g., Hopkins v. Cockrell*, 325 F.3d 579, 583-85 (5th Cir.), *cert. denied*, 540 U.S. 968 (2003); *Barnes v. Johnson*, 160 F.3d 218, 224-25 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983), *cert. denied*, 466 U.S. 984 (1984).

**Involuntary Confession**

Morales asserts that his confession was involuntary because it was coerced. He specifically points to the fact that he "had been working 12 hr shift[s] for over 3 days with only 5 hrs (approx) sleep" before his confession was taped through "hidden surveillance." (1905 Federal Pet. at 7, 8B.) He also argues that the confession was involuntary because he was not told he was being videotaped. (*Id.*)

The Due Process Clause of the Fourteenth Amendment prohibits the use of coerced

confessions against the accused in criminal prosecutions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 223-24 (1973). Thus, courts must determine whether the confession was voluntarily given. Although there is no pat definition of voluntariness, a confession is voluntary if, "under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Restrepo*, 994 F.2d 173, 183 (5th Cir. 1993). A confession is voluntary if the defendant "made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." *Jurek v. Estelle*, 623 F.2d 929, 937 (5th Cir. 1980). The reviewing court must assess the characteristics of the defendant and the details of the interrogation, such as the youth of the defendant, his level of education, his level of intelligence, the lack of any advice to the defendant of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment, such as the deprivation of food or sleep. *Schneckloth*, 412 U.S. at 226.

After D.C. reported Morales's inappropriate conduct, Detective Caughron took Morales to an interview room. (3 R.R. at 11-12.) Detective Caughron read Morales his *Miranda* rights, which Morales voluntarily waived. (*Id.* at 12-14.) Morales, who was taped without his knowledge, spontaneously volunteered that he had digitally penetrated D.C. (*Id.* at 17, 19, 55.) Morales did not make any mention at trial that he was coerced into confessing. (*Id.* at 54-55.) Other than Morales's conclusory and self-serving allegations, there is no evidence to support Morales's contention that his confession was coerced and, thus, involuntary. Further, the fact that Morales was unaware that he was being taped does not render his confession involuntary or inadmissible. *Etheridge v. State*, 903 S.W.2d 1, 16-17 & 16 n.14 (Tex. Crim. App. 1994), *cert. denied*, 516 U.S. 920 (1995).

**Voluntariness Hearing**

Morales argues that the trial court erred by failing to conduct a hearing to determine the voluntariness of his confession. *Jackson v. Denno*, 378 U.S. 368, 376-77 (1963). (1905 Federal Pet. at 7, 8B.) Even assuming Morales properly challenged the voluntariness of his confession (3 R.R. at 18), he had no right to a separate *Jackson v. Denno* hearing in his nonjury trial. *Allen v. McCotter*, 804 F.2d 1362, 1363-64 (5th Cir. 1986).

**Insufficient Evidence**

Morales argues that the evidence is legally insufficient to support his conviction because D.C. consented to his conduct. (1905 Federal Pet. at 8, 8B.)[2] To review the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). All credibility choices and conflicting inferences are to be resolved in favor of the fact-finder. *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822 (2000). This court must determine if the evidence is constitutionally sufficient to support the conviction, i.e., whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson*, 443 U.S. at 324 n.16). This court need not find that the evidence excluded every reasonable hypothesis of innocence or was wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could have found that the evidence, whether direct or

---

[2]Although Morales does not specifically argue insufficiency of the evidence, liberally construing his petition, the crux of his claim is a no-evidence argument. *See Fisher v. Texas*, 169 F.3d 295, 299 (5th Cir. 1999) (holding pro se filings must be construed liberally).

circumstantial, and all reasonable inferences drawn from it established guilt beyond a reasonable doubt. *United States v. Salazar*, 958 F.2d 1285, 1294 (5th Cir.), *cert. denied*, 506 U.S. 863 (1992).

The Fifth District Court of Appeals found that the evidence was sufficient under the less stringent factual-sufficiency standard:

> [Morales] maintains [D.C.'s] lack of modesty or embarrassment and her action of rolling over support his contention that she consented to the digital penetration. We disagree. Even assuming that [D.C.] was not embarrassed by [Morales] seeing her in various stages of undress, the trial court could have concluded that [D.C.'s] displays of nudity were a necessary result of her stays at the hospital and not an invitation for [Morales] to sexually assault her.[3] The trial court also could have concluded [D.C.'s] action of rolling over onto her back while [Morales] was massaging her was her attempt to stop [Morales's] unsolicited massage. Moreover, [D.C.] gave definite and unequivocal testimony that she did not consent to the digital penetration. At the time of the offense, she was recuperating from colon surgery and required regular administration of pain medication, which lessened her ability to physically resist [Morales]. After reviewing the record in a neutral light, we conclude the proof of [D.C.'s] lack of consent was not so obviously weak as to undermine confidence in the verdict. We further conclude the proof of [D.C.'s] lack of consent was not greatly outweighed by contrary proof.

*Morales*, 2000 WL 1256878, at *3-4. On state habeas review, the trial court and the Court of Criminal Appeals likewise denied this claim. (1 State Habeas R. at 33.)

Morales has not overcome the presumption of correctness, which applies to these factual findings, with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Indeed, under Texas law, the evidence would allow a reasonable fact-finder to conclude that the sexual assault was without D.C.'s consent. TEX. PENAL CODE ANN. § 22.011(b)(3) (Vernon Supp. 2004-05); *Elliott v. State*, 858

---

[3]The record indicates [D.C.] had a colostomy bag as a result of her colon troubles. One of [Morales's] duties was to empty [D.C.'s] colostomy bag. Thus, it is not surprising [D.C.] "exposed" herself to [Morales] during the course of his duties. The record also indicates [D.C.] made approximately six visits to the hospital in the year prior to August 15, 1999. Carr usually spent four or five days in the hospital on each visit and, at times, was hooked to an IV line. Again, it would not be surprising that [D.C.] might change clothes while at the hospital and that she might have required [Morales's] assistance to do so.

S.W.2d 478, 485 (Tex. Crim. App.), *cert. denied*, 510 U.S. 997 (1993); *Suarez v. State*, 901 S.W.2d 712, 719 (Tex. App.—Corpus Christi 1995, pet. ref'd) (en banc).

**State Habeas Corpus Proceedings**

Morales asserts that the state habeas judge, who was not the presiding judge, improperly withdrew the presiding judge's order designating issues. (1905 Federal Pet. at 8A.) Errors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995), *cert. denied*, 518 U.S. 1022 (1996). An attack on a state habeas proceeding does not entitle the petitioner to habeas relief with respect to his conviction because it "is an attack on a proceeding collateral to the detention and not the detention itself." *Millard v. Lynaugh*, 810 F.2d 1403, 1410 (5th Cir.), *cert. denied*, 484 U.S. 838 (1987). Thus, this claim is not cognizable on federal habeas review. *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.), *cert. denied*, 527 U.S. 1056 (1999).

**Revocation**

Morales asserts that his probated sentence was wrongfully revoked based on the unconstitutional sexual-assault conviction. (1907 Federal Pet. at 7.) As discussed above, there is no constitutional infirmity in Morales's sexual-assault conviction. Therefore and as held by the state court of appeals on direct review, his probation was correctly revoked based on this violation. *Morales*, 2000 WL 1256878, at *3-4; *see generally Pickens v. Texas*, 497 F.2d 981, 982 (5th Cir. 1974) (per curiam) (holding (1) revocation of probated sentence is within trial court's discretionary powers and will not be disturbed without a clear showing of an abuse of that discretion and (2) it is not an abuse of discretion to revoke probation based on a finding that conduct of probationer has not been as good as required by the probation conditions).

**Summary**

Morales is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination that Morales was not entitled to relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

**Recommendation**

This Court recommends that the petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

SIGNED April 11, 2005.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them by United States Mail. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**PAUL D. STICKNEY**
**United States Magistrate Judge**